UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VLADIMIR N. GORKOVCHENKO,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | 2:15-CV-228-FVS<br><br>**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT** |

**THIS MATTER** comes before the Court without oral argument based upon

cross motions for summary judgment.   The plaintiff is represented by Cory J.

Brandt.  The defendant is represented by Jennifer A. Kenney.

**BACKGROUND**

Vladimir N. Gorkovchenko was born on March 5, 1970.  On April 1, 2012,

he went to a hospital complaining of numbness in his tongue and jaw.  (TR 244-

45.)  An emergency room physician diagnosed stroke and admitted him to the

hospital.  The next day, he was examined by a neurologist, who concluded the

Order ~ 1

stroke had resulted in "a very mild right facial droop and dysarthria [speech disorder]." (TR 242.)  The neurologist went on to observe Mr. Gorkovchenko did not appear to be suffering any "focal sensory or motor deficits in the extremities and [his] gait and balance [were] good." *Id.*

On April 18, 2012, Mr. Gorkovchenko went to the Rockwood Epilepsy and Stroke Center for a consultation with ARNP Janette Worley.  (TR 280.)  Among other things, she performed a "Physical Exam," a "Detailed Neurologic Exam," and a "Mental Status Exam ("MSE")."  (TR 283.)  Mr. Gorkovchenko did reasonably well on the latter, correctly answering 27 of the 30 questions.  *Id.* Indeed, nowhere in her report does ARNP Worley suggest, much less state, he suffered lasting cognitive damage as a result of the stroke that prompted his consultation with her.

On May 14, 2012, Mr. Gorkovchenko applied for Title II disability insurance benefits and Title XVI supplemental security income.  42 U.S.C. §§ 401-434, 1381-1383f.  The day after, he went to Pavel Conovalciuc, M.D., complaining of "memory loss."  (TR 333.)  As part of the examination, Dr. Conovalciuc

Order ~ 2

performed a "cognitive assessment." (TR 334.) The assessment consisted of 33

questions that tested Mr. Gorkovchenko's "orientation," "immediate recall,

"attention and calculation," "delayed recall," and "language." (TR 334-35.) Mr.

Gorkovchenko answered 28 of the 33 questions correctly. *Id.*

On August 17, 2012, the Social Security Administration denied Mr.

Gorkovchenko's DIB and SSI claims, whereupon he requested reconsideration.

In response to his request, the Disability Determination Services arranged for

Jeanette Higgins, Psy.D., to complete a psychological assessment. Dr. Higgins

determined he suffers from cognitive disorder and memory impairment. (TR

361.) Based upon her findings, Dr. Higgins concluded Mr. Gorkovchenko does

not "have the ability to understand, remember, and carry out complex

instructions or to make complex work-related decisions[.]" *Id.* Nor, in her

opinion, does he have "the ability to interact appropriately with the public." *Id.*

Dr. Higgins' report was submitted to Diana Fligstein, Ph.D., a consulting

psychologist. Dr. Fligstein disagreed with Dr. Higgins' determination that Mr.

Gorkovchenko's memory is significantly impaired. For one thing, Dr. Fligstein

Order ~ 3

noted he has shown minimal indication of memory impairment when examined by physicians.  For another thing, she noted he is successfully performing activities -- like driving a car -- that one would not expect him to be able to perform were he as impaired as Dr. Higgins thinks.  (TR 92.)  In Dr. Fligstein's opinion, Mr. Gorkovchenko is not disabled.  The SSA agreed with her assessment and denied his request for reconsideration.  (TR 93.)

At that point, Mr. Gorkovchenko exercised his right to a hearing before an administrative law judge.  Prior to the hearing, the ALJ asked James Haynes, M.D., a neurologist, to review Mr. Gorkovchenko's medical records.  Dr. Haynes testified the stroke Mr. Gorkovchenko suffered was "very small."  (TR 36.)  Dr. Haynes did not think it would cause "a neurological deficit," *id.*, nor did he think it would result in any "functional limitations."  (TR 37.)  As far as Dr. Haynes was concerned, the stroke was not one which would cause "any impairment."  *Id.*

On June 20, 2014, the ALJ issued a written decision analyzing Mr. Gorkovchenko's DIB and SSI claims pursuant to the SSA's five-step sequential evaluation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Mr. Gorkovchenko

Order ~ 4

challenges findings the ALJ made at steps two and four.  Thus, the focus will be

on those two steps.

At step two, the ALJ had to decide whether Mr. Gorkovchenko is severely

impaired.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  She found he

suffers from a number of severe impairments; namely, "status-post small

cardiovascular accident in April 2012[1] ; hypertension; cardiomyopathy[2] ; knee

pain with minimal objective findigs; and pain disorder."  (TR 14.)  However,

contrary to Dr. Higgins, the ALJ decided Mr. Gorkovchenko either does not suffer

from a cognitive disorder or, if he does, the disorder antedated the 2012 stroke

and does not impose any limitation upon his ability to perform past relevant

---

[1]It's possible the ALJ meant to say "status-post small **cerebrovascular** accident."
See TR 17 (summarizing the testimony of Dr. Haynes) (emphasis added).  If so,
the ALJ may be referring to the state a person experiences following a stroke.
(http://medical-dictionary.thefreedictionary.com/browse/status-post (last
visited Jan. __, 2017).

[2] "[A]ny disease of the heart muscle, leading to decreased function."
Dictionary.com, (http://dictionary.reference.com/browse/cardiomyopathy (last
visited Jan. __, 2017).

Order ~ 5

work.  (TR 18.)  Mr. Gorkovchenko takes exception to the ALJ's finding with

respect to cognitive disorder.

At step four, the ALJ had to formulate Mr. Gorkovchenko's residual

functional capacity.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Mr.

Gorkovchenko's RFC represents the "the most [he] can still do despite [his]

limitations."  20 C.F.R. §§ 404.1545, 416.945.  In order to complete that task, the

ALJ had to evaluate contradictory evidence.  As it turned out, she assigned

"limited weight" to Mr. Gorkovchenko's testimony (TR 23) and "little weight" to

Dr. Higgins' psychological assessment.  (TR 24.)  By contrast, the ALJ gave "some

weight" to Dr. Haynes' testimony (TR 23) and she gave "significant weight" to Dr.

Fligstein's opinion.  (TR 24.)  Based, in large part, upon those determinations, the

ALJ found that Mr. Gorkovchenko "is capable of performing past relevant work,"

and, thus, he is not disabled.  (TR 25-6.)  He disagrees with both the ALJ's

ultimate ruling and the adverse credibility determinations upon which it rests.

Mr. Gorkovchenko asked the Appeals Council to review the ALJ's

unfavorable ruling, but on July 15, 2015, the Council declined to do.

Order ~ 6

Consequently, on that date, the ALJ's ruling became the final decision of the

Commissioner of the Social Security Administration.  20 C.F.R. §§ 404.984(b)(2),

416.1484(b)(2).  Mr. Gorkovchenko commenced this action on September 2,

2015.  The Court has jurisdiction over the subject matter of his claim.  42 U.S.C. §

405(g).

**STANDARD OF REVIEW**

A district court may enter "judgment affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing."  42 U.S.C. § 405(g).  However, review is limited.  "The

findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive[.]"  *Id.*  As a result, the Commissioner's

decision "will be disturbed only if it is not supported by substantial evidence or

it is based on legal error."  *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir.1986).

"Substantial evidence means more than a mere scintilla, . . . but less than a

preponderance."  *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576

(9th Cir.1988) (internal punctuation and citations omitted).

Order ~ 7

**ANALYSIS**

<u>Jeanette Higgins</u>

Dr. Higgins examined Mr. Gorkovchenko during the fall of 2012.  (TR 361.)

Based upon her findings, Dr. Higgins concluded he does not "have the ability to

understand, remember, and carry out complex instructions or to make complex

work-related decisions[.]"  (TR 361.)  Nor, in her opinion, does he have "the

ability to interact appropriately with the public."  *Id.*  The ALJ substantially

discounted Dr. Higgins' assessment, according it "little weight."  (TR 24.)  Mr.

Gorkovchenko disagrees with the ALJ's adverse credibility determination.  As he

points, it may be upheld only if she provided "specific and legitimate reasons"

that are "supported by substantial evidence in the record."  *Reddick v. Chater*,

157 F.3d 715, 725 (9th Cir.1998).

One of the reasons the ALJ discounted Dr. Higgins' assessment is that, in

the ALJ's opinion, it "not supported by [Mr. Gorkovchenko's] documented and

observed abilities."  (TR 24.)  As authority, the ALJ cited the results of both the

Mental Status Exam that ARNP Worley conducted on April 18, 2012, and the

Order ~ 8

Cognitive Assessment that Dr. Dr. Conovalciuc performed on May 15, 2012.  The

results of those two exams are consistent with each other, which suggests the

results are reliable, but they are inconsistent with Dr. Higgins' assessment.  Thus,

they tend to undermine the validity of the latter.

The ALJ did not rely exclusively upon Mr. Gorkovchenko's documented

abilities in evaluating Dr. Higgins' report, she also had an opportunity to observe

his cognitive abilities during the course of the hearing.  Not only did she ask Mr.

Gorkovchenko a number of questions, but so did his attorney.  Many of the

questions tested his memory.  The ALJ watched him respond, and, judging from

the transcript, he responded reasonably well.  Particularly telling are the

answers he gave to a series of questions concerning his employment history.  His

attorney would provide him with the name of a prior employer and then ask him

what he did for the company.  The attorney mentioned five different employers.

With one exception, Mr. Gorkovchenko correctly described the work he

performed for each company.  (TR 44-5.)  His ability to recall such information

was consistent with the results obtained by ARNP Worley and Dr. Conovalciuc.

Order ~ 9

The ALJ's skepticism concerning Dr. Higgins' opinions was reinforced by

Dr. Haynes' testimony.  The latter explained the stroke in question had occurred

in "the right frontal area of Mr. Gorkovchenko's brain.  (TR 36.)  The stroke was

"very small, about the size of a BB."  *Id.*  Dr. Haynes did not think it would cause

"a neurological deficit," *id.*, nor did he think it would result in any "functional

limitations."  (TR 37.)  As far as Dr. Haynes was concerned, the stroke was not

one which would cause "any impairment."  *Id.*

Of course, an ALJ may not discount the opinions of an examining expert

based solely upon a contrary opinion from a non-examining expert.  *Morgan v.*

*Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999).  But that is not what happened here.

Dr. Haynes' assessment of Mr. Gorkovchenko's medical records was only one of

the considerations the ALJ relied.  She also considered her observations at the

administrative hearing and the data that was was collected by ARNP Worley and

Dr. Conovalciuc.  Together, they provided a substantial basis for discounting Dr.

Higgins' opinions.

<u>Vladimir Gorkovchenko</u>

At the administrative hearing, Mr. Gorkovchenko described the effects of

his impairments:  trouble swallowing (TR 40), shortness of breath when

walking, *id.*, needs a cane for stability, *id.*, pain in his knees (TR 41), becomes

dizzy when he bends over and straightens up, *id.*, and has trouble remembering

things he has read.  (TR 43.)  The ALJ was not unsympathetic.  She found his

impairments reasonably could be expected to cause the types of symptoms she

described.  (TR 21.)  Consequently, she was required to evaluate "the intensity,

persistence, and functionally limiting effects of the symptoms" in order to

determine "the extent to which the symptoms affect [Mr. Gorkovchenko's] ability

to do basic work activities."  SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996).

"This requires the adjudicator to make a finding about the credibility of the

individual's statements about the symptom(s) and its functional effects."  *Id.*  If

there is no evidence of malingering on the claimant's part, "the ALJ may reject

the claimant's testimony regarding the severity of her symptoms only if he

Order ~ 11

makes specific findings stating clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir.1996).

The ALJ began with Mr. Gorkovchenko's alleged memory impairment.  As she pointed out, his complaints in that regard are not supported by the results of either ARNP Worley's Mental Status Exam or Dr. Conovalciuc's Cognitive Assessment.  Nor are they supported by his testimony at the administrative hearing.  In that proceeding, he had to answer a number of questions that required him to recall information.  The ALJ watched him as he answered those questions.  While he made some mistakes, his overall performance was solid, which is exactly what one would expect given his scores on ARNP Worley's Mental Status Exam and Dr. Conovalciuc's cognitive assessment.  Thus, the ALJ had substantial basis for discounting Mr. Gorkovchenko's complaints of memory loss.

The remaining issue, then, is whether the ALJ also had a substantial basis for discounting Mr. Gorkovchenko's description of his physical symptoms.  One of the circumstances that troubled the ALJ was Mr. Gorkovchenko's assertion

Order ~ 12

that he must rely upon a cane in order to move about safely.  She found little or no support for that assertion in his medical records.  For example, on April 1, 2012, a hospital physician evaluated Mr. Gorkovchenko's gait.  The physician observed "normal stance and stride, [with] a slight limp on the right."  (TR 242.)  Thereafter, Mr. Gorkovchenko went to Dr. Conovalciuc on at least two occasions complaining of knee pain.  On February 6, 2013, the latter recommended exercise, an elastic knee sleeve, and acetaminophen.  (TR 386.)  Similarly, on February 28, 2014, he recommended exercise, physical therapy, and acetaminophen.  (TR 404.)  On neither occasion did Dr. Conovalciuc recommend Mr. Gorkovchenko use a cane.  Thus, the ALJ properly questioned the validity of Mr. Gorkovchenko's assertion he needs a cane.  She reasonably construed his assertion as an indication he tends to overstate his symptoms.

Another circumstance that troubled the ALJ was the apparent discrepancy between information that is contained in a Function Report and statements Mr. Gorkovchenko made to Dr. Higgins.  The Function Report was completed on September 14, 2012, with assistance from a family member.  In response to a

Order ~ 13

question asking why he cannot prepare meals, he indicated, "I am unable to

stand for the time of preparation and have no patience for the food to be

completed and prepared." (TR 206.[3] )  However, on October 8, 2012, he advised

Dr. Higgins he does not have "significant difficulty with most activities of daily

living:  he is able to perform basic self care tasks, prepare simple meals, perform

basic housekeeping tasks, and shop for groceries on a list." (TR 359.)  Mr.

Gorkovchenko's statements to Dr. Higgins do appear to be inconsistent with his

answers on the the Function Report.  The ALJ properly construed the

inconsistency as an indication Mr. Gorkovchenko is an unreliable reporter of his

symptoms.

    To summarize, the ALJ had a substantial basis for discounting the

statements Mr. Gorkovchenko made concerning his mental and physical

condition.  His complaints of disabling physical impairments are undermined by

evidence indicating he is not a reliable reporter of his symptoms; that, indeed, he

---

[3] In fairness to Mr. Gorkovchenko, it is important to remember that a family

member wrote those words on his behalf.

Order ~ 14

tends to overstate them.  Similarly, his complaints of disabling memory loss are

contradicted by his scores on ARNP Worley's Mental Status Exam and Dr.

Conovalciuc's cognitive assessment and by his ability to recall and relate

information during the administrative hearing.  The last point deserves

emphasis.  The ALJ watched Mr. Gorkovchenko testify.  The opportunity to study

a witness' demeanor as he testifies is a valuable aid in assessing credibility.  It is

an advantage a reviewing court must respect.  *Molina v. Astrue*, 674 F.3d 1104,

1121 (9th Cir.2012).

**RULING**

A reviewing court should not substitute its assessment of the evidence for

the ALJ's.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999).  To the contrary,

a reviewing court must defer to an ALJ's assessment as long as it is supported by

substantial evidence.  42 U.S.C. § 405(g).  Here, the ALJ's written opinion

indicates she engaged in a careful review of the evidence.  She provided clear

and convincing reasons for discounting both Mr. Gorkovchenko's description of

his symptoms and Dr. Higgins' pessimistic assessment.  Since the ALJ's analysis

Order ~ 15

and conclusions are supported by substantial evidence, the Court will affirm her

ruling.

**IT IS HEREBY ORDERED**:

1.  The defendant's motion for summary judgment (**ECF No. 23**) is

**granted** and the plaintiff's (**ECF No. 18**) is **denied**.

2. The ALJ's decision of June 20, 2014 (TR 26) is affirmed.

**IT IS SO ORDERED**.  The District Court Executive is hereby directed to file

this Order, enter judgment accordingly, furnish copies to counsel, and close the

case.

**DATED** this 30th day of January, 2017.


                         s/Fred Van Sickle
                        FRED VAN SICKLE
                Senior United States District Judge